IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

IN RE:  JUSTIN W. HAMPTON, Debtor                       No. 2:18-bk-73189
                                                                                  Ch. 7


RUSSELL ZACHARY                                              PLAINTIFF

v.                                      No. 2:19-ap-07011

JUSTIN W. HAMPTON                                          DEFENDANT


ORDER AND OPINION FINDING DEBT NONDISCHARGEABLE


On February 14, 2019, Russell Zachary [Zachary or plaintiff] filed his *Complaint to Determine Nondischargeability of Debt* [complaint], seeking a determination that the judgment he obtained against Justin Hampton [defendant or debtor] in state court is nondischargeable under 11 U.S.C. § 523(a)(6).  On March 3, 2019, the defendant filed his *Answer to Complaint to Determine Nondischargeability of Debt.*  The Court held a trial on September 19, 2019 [September 19 trial].  Todd Griffin, Katrina Taylor, and Adrianna Grisham appeared for the plaintiff.  Keith Kannett appeared for the defendant.  At the conclusion of the trial, the Court took the matter under advisement.  For the reasons stated below, the Court finds that the debt owed to the plaintiff by the defendant is excepted from discharge as a result of defendant's willful and malicious injury to the plaintiff.


## Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 157 and 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052(a)(1).

**Background**

In the early morning hours of December 4, 2009, the plaintiff and the defendant were patrons of the same bar. At approximately 2:30 a.m., the defendant struck the plaintiff with his fist [the incident]. The defendant's punch caused the plaintiff to fall to the floor. The plaintiff sustained injuries and was taken to the hospital. On January 5, 2011, the defendant entered a guilty plea to battery in the second degree. *See* Ark. Code Ann. § 5-13-202. *See also Judgment and Disposition Order.* In May 2012, the plaintiff sued both the bar and the defendant in the Circuit Court of Johnson County, Arkansas. On March 13, 2014, following a jury trial, a *Judgment and Stipulation of Parties* [stipulation or state court judgment] was entered in the state court case. Based on interrogatories, the jury returned verdicts that both the bar and the defendant were negligent in causing the plaintiff's injuries and awarded him $500,000 in damages. The stipulation apportioned 40% of the damages to the bar and 60% of the damages to the defendant.

On November 30, 2018, the defendant filed his voluntary chapter 7 bankruptcy case. On February 14, 2019, the plaintiff filed this adversary proceeding against the defendant, seeking a determination that the state court judgment he obtained against the debtor is nondischargeable. In his complaint, the plaintiff alleges that the debtor had, "without provocation struck Plaintiff causing severe and permanent injuries to Plaintiff" and that the plaintiff suffered head lacerations and intercranial bleeding.[1] *Complaint,* ¶¶ 5 and 6.[2] The plaintiff further alleges that the damages are debts for willful and malicious injuries by the debtor and should not be discharged pursuant to § 523(a)(6). *Complaint,* ¶ 15. The debtor's answer generally denies the plaintiff's allegations. On September 12, 2019, seven days before the scheduled trial date, the debtor filed a motion for summary

---

[1] There is no evidence before the Court as to the specific nature or extent of the injuries suffered by the plaintiff.

[2] Although the *Complaint* was not introduced into evidence at trial, it is well-settled that a court may take judicial notice of its own records. *See in re Penny,* 243 B.R. 720, 723 n.2 (Bankr.W.D. Ark. 2000); *see also* Fed. R. Evid. 201.

2

judgment, arguing that he was entitled to summary judgment in his favor based on res judicata and collateral estoppel. The Court did not rule on the motion for summary judgment prior to the trial.[3]

During his opening statement at the September 19 trial, the plaintiff's attorney represented to the Court that negligence was the only issue submitted to the state court jury, based on a tactical decision made by the plaintiff's state court attorney not to present to the jury the question of whether the debtor's act was "intentional," because insurance coverage might not be available if the jury determined that the defendant's conduct was intentional.[4] At the outset of his opening statement, the defendant's counsel renewed his motion for summary judgment, arguing that the doctrines of res judicata and collateral estoppel precluded this Court from re-trying the matter because it had already been tried and fully adjudicated in the state court by the same parties. He supported his argument by pointing out that the plaintiff would be calling the same witnesses and presenting the same evidence that had been before the jury in the state court proceeding. The defendant's attorney argued that the plaintiff could have brought the issue of whether the defendant's conduct was intentional in the state court proceeding, and, therefore, further litigation in this Court should be precluded. The Court ruled that it would be premature to summarily dismiss the plaintiff's complaint based on res judicata or collateral estoppel and that it would reserve judgment on those arguments until after receiving evidence during the trial.

Three witnesses testified at the September 19 trial: the plaintiff, the defendant, and a witness to the incident, Dalton Kenner [Kenner]. Kenner testified that he did not remember the exact date of the incident, but that he had observed what occurred on the night of the incident, and that a video, subsequently entered into evidence, accurately depicted the incident. As the video played, Kenner identified himself, the plaintiff who

---

[3] Non-moving parties have 28 days to respond to a motion for summary judgment. General Order No. 37, Summary Judgment Motions, United States Bankruptcy Court, Eastern and Western Districts of Arkansas.

[4] The plaintiff had a different attorney during the state court trial.

was holding a beer bottle in each hand, and the defendant as the person who punched the
plaintiff at least once. He testified that he saw the defendant swing several more times as
the plaintiff was going down, but that he was unaware whether any other swings struck
the plaintiff.[5] He testified that the defendant's initial punch "knocked out" the plaintiff
and that he heard the plaintiff making snoring sounds while the plaintiff lay on the floor.
He testified that the plaintiff was "out" until the paramedics arrived. On cross
examination, Kenner admitted that (1) he had testified during the state court trial; (2) his
testimony during the September 19 trial was substantially the same as his testimony in the
state court trial, with no new revelations on September 19; (3) during the state court trial,
he had a full chance to testify and explain what had occurred the night of the incident; (4)
the jury heard what he said; (5) he has been a friend of the plaintiff since kindergarten;
(6) he did not know how much the plaintiff had been drinking that night and that the
plaintiff was holding two glass beer bottles—one in each hand—at the time of the
incident; and (7) he could not hear what was being said between the plaintiff and the
defendant immediately prior to the incident.

The defendant testified that (1) he had hit the plaintiff at least one time; (2) he did not
know how many times he swung at the plaintiff after the first punch; and (3) he had
pleaded guilty to second degree battery and was assessed $50,000 in fines and restitution
as a result of his plea agreement. The defendant testified that he had entered into the
criminal *Judgment and Disposition Order* without a trial. The defendant further testified
that the plaintiff's injuries were accidental and that he did not want to hurt the plaintiff
physically. He stated he was just trying to defend himself because the plaintiff was
threatening him at the time of the incident, "calling me a f-ing pussy" and saying he was
"going to whoop my f-ing ass." He further testified that the plaintiff's threats had begun
outside the bar when the bar's bouncer had asked the defendant to have people move
inside. The defendant testified that after the bouncer had moved the plaintiff inside the
bar, the plaintiff continued to "mouth" the defendant, repeatedly telling the defendant that
the plaintiff was going to "kick [his] ass." When asked why he struck the plaintiff, the

---

[5] The video corroborates Kenner's testimony that the defendant swung at the plaintiff
several more times.

defendant said he was just defending himself because the plaintiff had two beer bottles in his hands and the plaintiff had made a movement toward the defendant.  During cross examination, the defendant repeated that, at the time of the incident, he believed it was necessary to defend himself against the plaintiff and that he did not intend to harm the plaintiff.  The Court asked the defendant to point out, on the video, the specific threatening move that he believed the plaintiff had made.  Although the defendant attempted to identify some movement by the plaintiff, the Court was unable to discern from the video the specific threatening movement by the plaintiff as alleged by the defendant.

After the plaintiff rested, the defendant's counsel moved for directed verdict[6] and renewed his argument that res judicata and collateral estoppel applied and the Court should dismiss the plaintiff's complaint because the issue of whether the act was intentional could have been tried in state court but was not.  He further argued that negligence and intentional acts are mutually exclusive and, because the jury verdict found that the defendant's acts were negligent, the Court was precluded from finding the defendant's acts to be intentional.  The Court declined to render judgment at that time. *See* Fed. R. Bankr. P. 7052(c).

Thereafter, the plaintiff testified that (1) he cannot remember anything about the events of that night; (2) he did not know the defendant prior to that night; (3) he could not remember how much alcohol he had consumed prior to the incident; (4) he had participated in the state court trial as the plaintiff; (5) he had brought all the claims he wanted to bring in the state court lawsuit; (6) the testimony in this trial was the same as the testimony given in the state court trial; and (7) he had no evidence of what the defendant's intentions were on the night of the incident.

---

[6] Although the defendant's attorney stated that he was moving for directed verdict, the Court presumes that he was moving for a judgment on partial findings under Federal Rule of Civil Procedure 52(c) made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7052.

The following exhibits were admitted without objection: the criminal *Judgment and Disposition Order* dated February 3, 2011; the state court *Judgment and Stipulation of Parties*; a video of the incident; and a copy of Arkansas Code Annotated § 5-13-202 Battery in the Second Degree. Other than the *Stipulation*, no other portion of the state court record was offered into evidence during the September 19 trial. For the reasons stated below, the Court finds that neither res judicata nor collateral estoppel precludes this Court from determining the dischargeability of the debt in question. The Court further finds that the debt is nondischargeable under § 523(a)(6).

## Law & Analysis

Before turning to its analysis of whether the debt in question should be excepted from discharge under § 523(a)(6), the Court must first address the defendant's contention that res judicata and collateral estoppel preclude this Court from deciding whether the defendant willfully and maliciously injured the plaintiff in the light of the state court judgment based on negligence.

## I.       Preclusive Doctrines

      A.       Res judicata

"Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen,* 442 U.S. 127, 131 (1979). However, dischargeability determinations are core proceedings under 28 U.S.C. § 157(b)(2)(I) and are unique to bankruptcy. *Countrywide Home Loans, Inc. v. Blair* (*In re Blair*), 324 B.R. 725, 731 (2005). In particular, bankruptcy courts have exclusive jurisdiction over actions under § 523(a)(6). *Grogan v. Garner,* 498 U.S. 279 (1991); *Everly v. 4745 Second Ave., Ltd.* (*In re Everly*), 346 B.R. 791, 796 (B.A.P. 8th Cir. 2006). Therefore,

> the state court does not have jurisdiction and could not have determined the dischargeability of this debt in the state court action. Accordingly, the state court complaint and the adversary proceeding could not have involved the same causes of action and res judicata is not applicable in this situation.

*In re Blair*, 324 B.R. at 731. As a result, the Court finds that res judicata is inapplicable.

6

B.      Collateral Estoppel

Collateral estoppel principles apply in nondischargeability proceedings under § 523(a).
*Grogan,* 498 U.S. at 284 n.11.  "Collateral estoppel is a legal doctrine that 'bar[s] the
relitigation of factual or legal issues that were determined in a prior . . . court action,' and
applies to bar relitigation in federal court of issues previously determined in state court."
*Johnson v. Miera,* (*In re Miera*),  926 F.2d 741, 743 (8th Cir. 1991) (quoting *Grogan,*
498 U.S. at 284 n.11).  The substantive law of the forum state in whose courts the prior
judgment was entered is applied by the federal courts in determining whether collateral
estoppel arises.  *Osborne v. Stage* (*In re Stage*)*,* 321 B.R. 486, 492 (B.A.P. 8th Cir.
2005).

Arkansas courts consider four elements in determining whether a party asserting
collateral estoppel has proven that it applies to a subsequent action:

> (1) The issue sought to be precluded must be the same as that involved in
>     the prior action;
>
> (2) The issue must have been litigated in the prior action;
>
> (3) The issue must have been determined by a valid and final judgment; and
>
> (4) The determination must have been essential to the prior judgment.

*First Sec. Bank v. Hudson* (*In re Hudson*)*,* 428 B.R. 866, 869 (Bankr. E.D. Ark. 2010)
(citing *Riverdale Dev. Co. v. Ruffin Bldg. Sys., Inc.,* 356 Ark. 90, 146 S.W.3d 852, 855
(2004)).  The burden of establishing that all four elements are satisfied is on the party
asserting collateral estoppel.  *In re Miera,* 926 F.2d at 743.  The issue before this Court is
whether the defendant willfully and maliciously injured the plaintiff.  However, both
parties represented to this Court at the September 19 trial that the only issue before the
state court was negligence.  Therefore, the Court finds that the issue sought to be
precluded is not the same as that involved in the prior action, making collateral estoppel
inapplicable.  *See Fowler v. Fowler* (*In re Fowler*), 312 B.R. 287 (Bankr. E.D. N.C.
2004).  Because the Court finds that neither res judicata nor collateral estoppel precludes
this Court from deciding whether the defendant willfully and maliciously injured the

plaintiff under § 523(a)(6), the Court denies the defendant's motions for summary judgment and judgment on partial findings.

Although the Court finds that the state court judgment does not preclude litigation of the plaintiff's cause of action under § 523(a)(6), the state court judgment does have an impact on these proceedings because it establishes the amount of the debt owed by the defendant.  *See Chandler v. Alexakis* (*In re Alexakis*), No. 10-37871, 2012 Bankr. LEXIS 4164, at \*21 (Bankr. S.D. Ohio Sept. 6, 2012) (state court judgment conclusively established amount of the debt at issue in dischargeability proceedings).

> Pursuant to the doctrine of res judicata or claim preclusion as well as *Rooker-Feldman* principles, this court cannot revisit the Debtor's liability for the judgment debt *nor the amount of damages* awarded to the [plaintiffs] by the state court as those matters have been conclusively determined in the State Court Judgment.

*Id.,* 2012 Bankr. LEXIS 4164, at \*21 (emphasis added)**.**

"The court focuses its analysis, as it must, not on the nature of the liability—the negligence judgment—but rather on the basis for it."  *In. re Fowler,* 312 B.R. at 294.  "[T]he nature of the damages does not determine dischargeability of the claim. 'The language of section 523(a)(6) is directed at the nature of the conduct which gives rise to the debt, rather than the nature of the debt.'" *Suggitt v. Foushee* (*In re Foushee*), 283 B.R. 278, 283 (Bankr. N.D. Iowa 2002) (quoting *In re Miera*, 926 F.2d at 745).  "[S]tate court proceedings do not preclude a bankruptcy court from making an independent determination as to the elements required for determining dischargeability under § 523(a)(6)."  *Herring v. Parish* (*In re Parish*), 07-50365-NPO, 2009 Bankr. LEXIS 4030, at \*10 (Bankr. S.D. Miss. Dec. 7, 2009).  However, collateral estoppel does apply to matters actually litigated, including the jury's determination of the amount of the debt. *See id.*  As a result, the only matter left for this Court is to determine whether the debt established by the state court judgment is excepted from discharge under § 523(a)(6).

## II.    11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides:

> (a)   A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt-
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.  11 U.S.C. § 523(a)(6).

### A.    Willful

The Supreme Court has stated that "the word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury.  *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998).

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury. . . . The (a)(6) formulation triggers in the lawyer's mind the category of "intentional torts," as distinguished from negligent or reckless torts.

*Id.* (aff'g *Geiger v. Kawaauhau* (*In re Geiger*)*,* 113 F.3d 848, 852 (8th Cir. 1997)). Accordingly, § 523(a)(6) is not applicable to debts that occur as a result of injuries from reckless or negligent acts.  *Id.*  In the Eighth Circuit, the terms "willful" and "malicious" are two distinct elements, each of which must be shown to establish an exception to discharge.  *Fischer v. Scarborough* (*In re Scarborough*), 171 F.3d 638, 642 (8th Cir. 1999).  Willful injuries include injuries that occur because the debtor acted with the desire to cause those consequences.  *Blocker v. Patch* (*In re Patch*), 526 F.3d 1176, 1180 (8th Cir. 2008).

"Debts that are based upon traditional intentional torts such as battery are generally regarded by bankruptcy courts as being non-dischargeable."  *Thompson v. Kelly* (*In re Kelly*), 238 B.R. 156, 160 (Bankr. E.D. Mo. 1999).  However, a debt is not excepted from discharge under (a)(6) solely because it arises from an intentional tort, absent a showing of malice.  *See Barclays Am. Bus. Credit, Inc. v. Long* (*In re Long*), 774 F.2d 875, 881 (8th Cir. 2005).  As stated, the word "willful" modifies "injury," indicating a "deliberate

or intentional injury" and requires that a creditor must show that the debtor either intended the injury or that the injury was substantially certain to result from the act. *Kawaauhau,* 523 U.S. at 61. Here, the defendant admitted that he hit the plaintiff, invading a legally protected interest of the plaintiff. Although the defendant might not have intended for the plaintiff to be hurt as seriously as he ultimately was, the defendant clearly intended to strike the plaintiff. Accordingly, the Court finds that the defendant's conduct was willful.

B.     Malicious

"[M]alice requires conduct more culpable than that which is in reckless disregard of the creditor's . . . interests and expectancies." *Johnson v. Logue* (*In re Logue*), 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003). "While intentional harm may be difficult to establish, the likelihood of harm in an objective sense may be considered in evaluating intent." *Id.* "[A]n injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's tortious conduct was certain or almost certain to cause harm." *In re Stage*, 321 B.R. at 493 (citing *Waugh v. Eldridge* (*In re Waugh*), 95 F.3d 706, 711 (8th Cir. 1996)). An injury is malicious when it occurred as a result of "conduct targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause harm." *In re Scarborough*, 171 F.3d at 641. "Malicious for purposes of § 523(a)(6) means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act." *Erickson v. Halverson* (*In re Halverson*), 226 B.R. 22, 26 (Bankr. Minn. 1998).

It is proper for the Court to consider circumstantial evidence regarding the debtor's state of mind at the time of the incident. *See Hidy v. Bullard,* (*In re Bullard*), 449 B.R. 379, 386 (B.A.P. 8th Cir. 2011). Although it is undisputed that the debtor hit the plaintiff and caused injuries, the issue before this Court is whether the defendant acted with the requisite actual intent to cause injury. The defendant admitted that he hit the plaintiff and that the plaintiff was harmed, but that the plaintiff's injuries—as a result of the defendant's conduct—were unintentional. He attempted to justify his conduct by saying that he was fearful that the plaintiff intended to hit him with one of the beer bottles that

10

the plaintiff was holding in his hands.  However, the Court does not find this testimony credible.  Based upon the video documenting the physical aspects of their altercation, it is simply not believable that the defendant thought that he was in imminent danger of physical harm.  The Court finds it more likely that the defendant had grown tired of the plaintiff's "mouthing" and struck the plaintiff in anger.  Regardless, the defendant could have left the area where the plaintiff was standing or called the bouncer for assistance.  He did neither, and, instead, chose to throw a punch.  The fact that the defendant continued to swing punches (even if they did not connect) as the plaintiff was falling to the floor indicates that the defendant intended to injure the plaintiff.  The Court concludes that the defendant's use of force was not warranted under the circumstances.  Based on the evidence, the Court finds that the defendant's debt to the plaintiff arises from a "deliberate and intentional injury, not merely a deliberate or intentional act that leads to injury."  *See Kawaauhau*, 523 U.S. at 61.

## Conclusion

For all the reasons stated above, the Court finds that the defendant intended to hit the plaintiff, therefore the act was willful, and by punching the plaintiff—and continuing to swing—intended to harm him, making the act malicious within the meaning of the statute.  "It is precisely this type of willful and malicious tort that § 523(a)(6) was meant to address."  *See Green v. Olson* (*In re Olson*), 33 B.R. 835, 838 (Bankr. Minn. 2005).  Therefore, the Court finds that the debt owed by the defendant to the plaintiff is nondischargeable under 11 U.S.C. § 523(a)(6).

IT IS SO ORDERED.

Ben Barry
United States Bankruptcy Judge
Dated:  12/18/2019

cc:   Keith Kannett
      Todd Griffin
      Katrina Taylor
      Adrianna Grisham
      R. Ray Fulmer, II, chapter 7 trustee

11